IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:22-cv-00894-SKC

ERIN MAXWELL

    Plaintiff

v.

ADVANCED STERILIZATION PRODUCTS INC., a Delaware Corporation

    Defendant.

---

## ORDER RE: DISCOVERY OF INVESTIGATION REPORT

---

Defendant Advanced Sterilization Products, Inc. ("ASP") is a medical-device company that provides infection prevention services. It markets and sells sterilization and related products and software. Plaintiff Erin Maxwell ("Maxwell") previously served as ASP's Regional Sales Director for the Mountain South region.

Maxwell's claims in this case arise from her employment termination after she filed a "Speak Up"[1] complaint, which was one of several complaints she alleges she raised throughout 2021 regarding suspect company activities. In it, Maxwell detailed

---

[1] The Speak Up Program provides, in relevant part: "Employees are encouraged and expected to ask questions when unsure about any integrity or compliance issue, and are required to report actual or potential violations of law, our Standards of Conduct or other ASP policy. . . Report questions or concerns to your immediate supervisor or manager, or to any of the following resources: . . ." [Dkt. 29-1, p.4.]

1

her alleged prior reporting of compliance concerns relating to ASP's failure to follow its pricing and anti-kickback policies. She also reported that she was the subject of harassment by other ASP employees because she had previously reported her compliance concerns. ASP fired Maxwell shortly after she submitted her Speak Up complaint.

Maxwell submitted her Speak Up complaint on November 20, 2021. ASP ended her employment on December 17, 2021, effective December 31, 2021. Maxwell sued ASP in this Court asserting state law claims for breach of implied contract, wrongful termination in violation of public policy, and violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq*. ASP contends it ended Maxwell's employment for only one reason—a reduction in force. According to ASP, the decision had nothing to do with any alleged complaints Maxwell made, and such complaints, even if made, did not implicate any cognizable public policy sufficient to support a wrongful discharge claim. ASP claims it launched "a full scale investigation" into all of Maxwell's allegations, and it could not substantiate them. [Dkt. 18, p.4.]

This discovery dispute concerns a December 23, 2021 Investigation Report prepared by Ximena Cajas, ASP's Regional Compliance Leader. On August 19, 2022, ASP produced its privilege log identifying the Report. In a discovery hearing on January 23, 2023, the Court found ASP's privilege log insufficient and ordered ASP to amend the privilege log with appropriate details and provide it and the Report to

the Court, the latter for the Court's *in camera* review. The applicable entry from ASP's amended privilege log is the following:

**DEFENDANT'S SECOND AMENDED PRIVILEGE LOG**
**January 27, 2023**

| Internal ID No. or Bates No. | Date Prepared | Author | Recipient(s) | Content | Subject | Privilege |
|---|---|---|---|---|---|---|
| ASP_PRIV_003 (Removed; now Fortive-Maxwell 000932-000398 (CONFIDENTIAL) for the Court's in camera review) | 12/23/21 | Ximena Cajas | | Investigation Report | | Attorney-Client; Work Product, prepared at the direction of legal counsel; Attorney-Client Privileged Communication |

The Court has conducted the *in camera* review, has carefully considered applicable case law and the parties' arguments made at the hearing and in their Joint Discovery Dispute Report [Dkt. 25]. It now issues this Order.

A.   **Legal Principles**

State law governs issues of privilege in cases premised on diversity jurisdiction. Fed. R. Evid. 501; *see also Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (1998). In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Court*, 533 P.2d 32, 35 (Colo. 1975)). The privilege applies only to communications under circumstances giving rise to a reasonable expectation that they will be treated as confidential. *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). It

3

includes information given to the attorney to enable them to render legal advice. *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000). But mere statements of fact are not protected by the attorney-client privilege. *People v. Trujillo*, 144 P.3d 539, 545 (Colo. 2006) (citing *Gordon*, 9 P.3d at 1123) (noting "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney"). "The burden of establishing the applicability of the attorney-client privilege rests with the claimant of the privilege." *Black v. Southwesterm Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003) (citing *Clark v. District Court*, 668 P.2d 3, 8 (Colo. 1983)); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

"Unlike the attorney client privilege, the work product [doctrine] is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining Inc.*, 136 F.3d at 702 n.10 (cleaned up). To be subject to the work product doctrine, the materials must have been "prepared in anticipation of litigation. It does not protect materials prepared in the 'ordinary course of business.'" *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) (citation omitted). Thus, to receive work product protection, the party resisting discovery must demonstrate the information at issue was prepared in anticipation of litigation or for trial. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010).

## B.   Analysis

### 1.   Relevance of the Report

The scope of discovery in federal court is broad. Federal Rule of Civil Procedure 26 permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, while the proportional needs of the case further tailor the scope of discovery. Fed. R. Civ. P. 26(b)(1). When evaluating proportionality, courts consider: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Nothing in Rule 26(b)(1) requires the court to address all five proportionality factors. *See GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-CV-00746-MSK-SKC, 2020 WL 4282291, at *11 n.5 (D. Colo. July 24, 2020) ("If the movant is not required to address all the factors, surely the Court is not required to either."). Information within the proper scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Court finds the Report relevant to Plaintiff's claim for wrongful discharge in violation of public policy. One element of that claim requires Maxwell to prove ASP fired her because she exercised an important work-related right or privilege, or a statutory, regulatory, or rule-based right relating to public health, safety or welfare. CJI-Civ. 31:13 (CLE ed. 2023). Assuming, without deciding, that Maxwell's Speak Up

5

complaint(s) qualifies as the requisite exercise of an actionable public policy, ASP defends this case by arguing it terminated her employment based solely on a reduction in force. [Dkt. 18, p.3.] And to bolster its defense, ASP additionally argues Maxwell's Speak Up complaint(s) had no merit. [*Id.*, p.4.]

The Court finds the Report is relevant—at least for discovery purposes—to these defenses and ASP's credibility.[2] Fed. R. Civ. P. 26(b) (discovery must be relevant to a claim or defense); *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) (discussing the relevance of certain evidence to the defendant's credibility); *see also Scherbarth v. Woods*, No. 16-CV-2391-KHR, 2018 WL 851344, at *9 (D. Colo. Feb. 13, 2018) (allowing discovery of evidence relevant to credibility). The Court further finds the single, seven-page report, meets the proportional needs of the case in light of ASP's defenses and the parties' relative access to this relevant piece of information.

### 2. Attorney-Client Privilege and Work Product Doctrine

Having determined the Report is discoverable, the Court now addresses ASP's claims of attorney-client privilege and work product. The Report is a seven-page document authored by Cajas, ASP's Regional Compliance Leader. Each page has the watermark, "confidential," placed diagonally across the page in capital letters. Each page also contains the following header in red letters in the upper-left-hand corner:

> Privileged and Confidential
> Attorney-Client Communication
> Prepared at the Direction of Legal Counsel

---

[2] The Report may also have relevance to ASP's Second and Fourth Affirmative Defenses.

The Report summarizes Cajas' interviews with six individuals, including Maxwell, concerning (in relevant part) Maxwell's Speak Up complaint made on November 20, 2021. It also contains Cajas' conclusions over whether Maxwell's complaints were substantiated.

ASP has failed to meet its burden to demonstrate the Report was prepared at the direction of counsel for the purpose of rendering legal advice. First, and most notably, the privilege log identifies *no* recipients of the Report. This is in stark contrast to other privilege-log entries that identify Paul Bae, Esq. (ASP's General Counsel), or Laura Davis, Esq. (an attorney with Axiom Law who engages with ASP to provide legal assistance with internal investigations) as recipients of other documents over which ASP claims the attorney-client privilege. It strains credulity that on the one hand, ASP claims the Report was prepared at the direction of legal counsel, and on the other hand, it does not identify a single attorney (or anyone) as a recipient. If the purported attorney-client-privileged information was not shared with an attorney, it is not possible for the attorney-client privilege to inure to that communication. *Gordon*, 9 P.3d at 1123 (the attorney-client privilege applies "to matters communicated by or to the client in the course of gaining counsel"); *see also Bernardi v. Cmty. Hosp. Ass'n*, 443 P.2d 708, 715 (Colo. 1968) (finding the attorney-client privilege did not apply and stating, "[i]t well may be that the practice of making an incident report resulted from the advice of counsel, but it seems rather plain that these incident reports were not prepared for the attorney. Rather, they were prepared

7

for certain administrative officials of the Hospital and they were available to the Hospital's attorney if he wished to see them.").

Second, the Report instead appears to have been prepared as a matter of company policy based on ASP's Speak Up program [Dkt. 29-1, p.4] or its Government Business Ethics and Conduct ("Ethics Policy") [Dkt. 29-3] policy. Both encourage employees to report actual or potential violations of law or company policy. Once reported, the Ethics Policy states, in relevant part: "ASP employees who report violations and potential violations will be treated with respect. ASP's Compliance Team will lead all investigations of alleged violations or misconduct with fairness and impartiality. [E]mployees are expected to fully cooperate in internal investigations." [Dkt. 29-3, p.3.]

Just as this policy provides, Cajas, a member of the Compliance Team, conducted the investigation into Maxwell's complaints, and she cooperated with the internal investigation by interviewing with Cajas. In other words, Cajas' investigation appears to have been conducted as part of ASP's ordinary course of investigating employee Speak Up or other complaints. *Gordon v. Sunrise Senior Living Mgmt., Inc.*, No. 08-CV-02299-REB-MJW, 2009 WL 2959213, at *1 (D. Colo. Sept. 10, 2009) ("[T]his court finds that the defendant has not shown that the internal investigation was primarily conducted at [attorney] Edmondson's direction in anticipation of litigation . . . rather than just prepared in the ordinary course of

business.") And the fact that neither ASP's privilege log nor the Report identify any attorney as receiving the Report only bolsters this conclusion.

### 3. Conclusion

For these reasons, ASP has failed to meet its burden to show the Report was prepared at the direction of legal counsel for the purpose of rendering legal advice; the Court does not find the attorney-client privilege applies to the Report. For these same reasons, ASP has failed to demonstrate the Report was prepared in anticipation of litigation for the work-product doctrine to apply.[3]

\* \* \*

---

[3] At various points in the Joint Discovery Dispute Report, ASP argues the purpose of its reporting policies is so that ASP can "determine litigation risk[,]" create "documentation to aid in possible future litigation[,]" or "adequately prepare for anticipated litigation." [*See generally* Dkt. 25.] But this too strains credulity for company policies of this sort. Just take the plain language of the policies themselves. The Speak Up Program describes the purpose of reporting as follows: "In bringing questions or violations to a manager's attention, you help to ensure ASP achieves and sustains the highest levels of integrity and compliance, and you are (sic) help build the foundation of our future success." [Dkt. 29-1, p.4.] And the Ethics Policy describes its purpose, in relevant part, as a means of aiding ethical business performance: "ASP understands that our success depends on our reputation for ethical business performance. Every day, we are expected to perform our jobs honestly, diligently, with integrity, and in compliance with all applicable laws and regulations." [Dkt. 29-3, p.2.] Thus, the notion that ASP's internal reporting procedures are solely designed to determine litigation risk, as opposed to being designed to nip unethical, inappropriate, or illegal workplace conduct in the bud, appears a stretch.

ASP is **ORDERED** to produce the Report to Maxwell within 48 hours of the date and time of this Order.

DATED:   May 12, 2023

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

10